KONIAK v HERITAGE NEWSPAPERS, INC

Docket No. 121289. Submitted April 16, 1991, at Detroit. Decided
    August 5, 1991, at 9:35 A.M.

    William C. Koniak brought an action in the Wayne Circuit Court
    against Heritage Newspapers, Inc., and Jameson Cook after
    Heritage published in several of its newspapers a series of
    articles written by Cook in connection with charges against the
    plaintiff of criminal sexual conduct involving a sixteen-year-old
    girl and criminal assault and battery involving his former wife.
    The defendants initially reported that information in police
    reports taken from the girl and former wife indicated that the
    plaintiff had allegedly assaulted the girl thirty to fifty times
    during a 1½-year period. After a preliminary examination
    during which the girl testified that the plaintiff had assaulted
    her only eight times, the defendants, in reporting the plaintiff's
    bindover, repeated the allegation that the plaintiff assaulted
    the girl thirty to fifty times. The plaintiff eventually was
    acquitted of criminal sexual conduct. Regarding the charge of
    assault and battery of the former spouse, the defendants pub-
    lished an article that stated that the plaintiff pleaded no
    contest to the charge and was sentenced to six months' proba-
    tion. In actuality, the plaintiff tendered a plea of nolo conten-
    dere, which was taken under advisement for six months, and
    the charge was dismissed at the end of that period. The
    defendants moved for summary disposition, contending that the
    alleged defamatory statements were privileged under MCL
    600.2911(3); MSA 27A.2911(3) as substantially accurate reports
    of judicial proceedings. The court, J. Phillip Jourdan, J.,
    granted the motion, ruling that while the statutory privilege
    did not apply to the articles regarding the criminal sexual
    conduct charge, the gist or sting of those articles was substan-
    tially accurate and the reported number of alleged assaults had
    little effect on the readers' perception. Concerning the assault
    and battery article, the court ruled that it was essentially and

REFERENCES

Am Jur 2d, Libel and Slander §§ 195, 196, 333, 334.
See the Index to Annotations under Newspapers and Periodicals;
    Libel and Slander.

substantially true and thus not libelous as a matter of law. The plaintiff appealed.

The Court of Appeals *held:*

1. MCL 600.2911(3); MSA 27A.2911(3) grants a qualified privilege against libel to a reporter, editor, publisher, or proprietor of a newspaper for the publication of a fair and true report of a public and official proceeding. The privilege applies to a report of criminal proceedings where the reporter relies on information not contained in the official record of the proceeding so long as the gist or sting of the report is substantially true, i.e., where any inaccuracy does not alter the complexion of the charge and has no effect on the reader different than that which the literal truth would produce, absent proof that such variance caused the plaintiff damage.

2. Where the facts of a libel action involving a newspaper report of a public and official proceeding are disputed or where reasonable minds would disagree over whether the inaccuracy could produce an effect on the reader different than that which the literal truth would produce absent proof that such variance caused damage, the issue must be left to the trier of fact.

3. In this case, the article following the preliminary examination involving the criminal sexual conduct charge was not reflective of what was contained in the court record, giving rise to questions for the trier of fact concerning the effect of the inaccuracy on the reader and any damage the plaintiff may have sustained. The trial court erred in granting summary disposition of the libel claim related to the criminal sexual conduct charge.

4. Regarding the article about the assault and battery charge, the discrepancy between what actually transpired and what was reported is clear. The article's inaccuracies altered the complexion of the entire proceeding, arguably leading readers to believe that the plaintiff effectively had pleaded guilty and had been sentenced when in fact he had not. The trial court erred in finding that this article was substantially accurate and in granting summary disposition on the basis of that finding.

Reversed.

1. LIBEL AND SLANDER — NEWSPAPERS — QUALIFIED PRIVILEGE — PUBLIC AND OFFICIAL PROCEEDINGS.

The qualified privilege granted by statute to a reporter, editor, publisher, or proprietor of a newspaper for the publication of a fair and true report of a public and official proceeding applies where a newspaper report of a criminal proceeding is prepared by a reporter who relies on information not contained in the

official record of the proceeding so long as the gist or sting of the report is substantially true, i.e., where any inaccuracy in the report does not alter the complexion of the charge and has no effect on the reader different than that which the literal truth would produce, absent proof that such variance caused the plaintiff damage (MCL 600.2911[3]; MSA 27A.2911[3]).

2. LIBEL AND SLANDER — NEWSPAPERS — QUALIFIED PRIVILEGE — PUBLIC AND OFFICIAL PROCEEDINGS.

Summary disposition should not be granted in a libel action involving a newspaper report of a public and official proceeding where the facts of the action are disputed or reasonable minds would disagree over whether the report had an effect on the reader different than that which the literal truth would produce, absent proof that such variance caused damage (MCL 600.2911[3]; MSA 27A.2911[3]).

*Bellanca, Beattie & De Lisle, P.C.* (by *Frank D. Eaman*), for the plaintiff.

*Honigman Miller Schwartz & Cohn* (by *Herschel P. Fink* and *Michael A. Gruskin*), for the defendants.

Before: MURPHY, P.J., and SHEPHERD and T. G. KAVANAGH,* JJ.

SHEPHERD, J. In this defamation action, plaintiff appeals as of right an August 4, 1989, order granting summary disposition to defendants pursuant to MCR 2.116(C)(10). We reverse.

This action stems from a series of articles written by defendant Jameson Cook and published in a group of downriver newspapers collectively known as the Heritage Newspapers. On July 17, 1987, plaintiff was arrested and charged with criminal sexual conduct on the basis of an allegation that he sexually assaulted a then sixteen-year-old girl. On July 26, 1987, a story appeared in the Melvin-

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

dale Messenger bearing a headline of "Melvindale Man Charged in Flat Rock Rape." The article stated in pertinent part that "[a]ccording to information in police reports taken from the victim and her mother, Koniak allegedly assaulted the girl 30 to 50 times during an approximately one and one-half-year period." The article also noted that plaintiff's ex-wife had filed an assault and battery charge against plaintiff. Cook wrote the article after interviewing the mother, talking to police, and reviewing the police report.

At plaintiff's July 27, 1987, preliminary examination, the complainant testified that plaintiff had assaulted her only eight times (five times in March 1985 and three times in March 1986). A July 29, 1987, article reporting plaintiff's bindover on the csc charge again stated that plaintiff allegedly assaulted the girl thirty to fifty times since the spring of 1985. On December 18, 1987, an article by Cook appeared in the Ile Camera, under the headline "Koniak pled no contest," which reported that plaintiff had pleaded no contest to the charge of assault and battery on his wife and had been sentenced to six months' probation. The article described the plea as plaintiff's acceptance of the consequences of the conviction but not an admission of the crime. In actuality, plaintiff had tendered a plea of nolo contendere that was not accepted but only taken under advisement for six months. At the end of the six-month period, the charge was dismissed. The article also repeated the allegation that plaintiff had assaulted the girl thirty to fifty times. On February 1, 1988, plaintiff was acquitted by a jury of the criminal sexual conduct charge relating to the girl, and Cook wrote an article reporting this fact.

Plaintiff instituted this libel action in July 1988. A year later, defendants moved for summary dis-

position, pursuant to MCR 2.116(C)(10), asserting that the allegedly defamatory statements were privileged pursuant to MCL 600.2911(3); MSA 27A.2911(3) as substantially accurate reports of judicial proceedings. Concerning the reports regarding the CSC charge, the trial court found that while the statutory privilege was not applicable because Cook relied solely upon police reports, the gist or sting of the story was substantially accurate, that whether plaintiff allegedly assaulted the girl once, eight times, or thirty times would have little effect on public perception, and that defendants were therefore not liable. The court further found that the article regarding the disposition of the assault and battery charge was "essentially and substantially true" and thus not libelous as a matter of law.

The first question we must address on appeal is whether the information published by defendants with respect to the alleged assaults on the girl was cloaked with the so-called "official proceedings privilege" pursuant to MCL 600.2911(3); MSA 27A.2911(3). The question whether a privilege exists, immunizing a libel defendant from liability, is one of law. *Stablein v Schuster,* 183 Mich App 477, 480; 455 NW2d 315 (1990). At the time,[1] § 2911(3) stated in pertinent part:

No damages shall be awarded in any libel action brought against a reporter, editor, publisher, or

[1] Effective January 1, 1989, MCL 600.2911(3); MSA 27A.2911(3) was amended to encompass matters of public record, of a governmental notice, announcement, written or recorded report or record generally available to the public, or to acts or actions of a public body, in addition to public and official proceedings. This amended language, however, is not controlling here and we express no opinion with respect to what its effect would be on a matter of this kind in a future case.

> proprietor of a newspaper for the publication in it
> of a fair and true report of any public and official
> proceeding, or for any heading of the report which
> is a fair and true headnote of the article pub-
> lished.

Plaintiff maintains that, at least with respect to
the CSC matter, no statutory privilege exists be-
cause defendants relied on information obtained
from police reports and not official records. Plain-
tiff does not dispute that the statutory privilege is
applicable to the reports regarding the assault and
battery charge.

The scope of the statutory privilege, which is
not, as defendants argue, an absolute privilege but
rather a qualified one, was most recently ad-
dressed by our Supreme Court in *Rouch v En-
quirer & News of Battle Creek,* 427 Mich 157; 398
NW2d 245 (1986). In *Rouch,* the plaintiff was
arrested for first-degree criminal sexual conduct
but never formally charged. The article published
by the defendant was based on information ob-
tained from the police over the telephone and
stated that the charge had been authorized by the
prosecutor when, in fact, the prosecutor's office
had refused to even issue a warrant. In holding
the statutory privilege inapplicable, the *Rouch*
Court noted that while the language employed in
subsection 3 dictated that it was intended to cover
at least the more limited common-law privilege to
report judicial proceedings, it was not intended to
be a "government action," "arrest record," or
"public records" privilege. *Id.,* pp 171-172. Thus,
concluded the Court, an arrest that amounts to no
more than an apprehension is not a "proceeding"
under the statute, and information gathered orally
or from police reports regarding an arrest where

no adjudicatory proceedings were begun is not privileged by virtue of that statute.[2]

In the present matter, however, official proceedings were commenced against plaintiff, because he was formally charged with an offense and ultimately tried and acquitted of the csc charge. The fact that Cook continued to rely on information gleaned from the police report, by itself, does not negate the application of the statutory privilege. As a panel of this Court stated in *McCracken v Evening News Ass'n,* 3 Mich App 32, 38-39; 141 NW2d 694 (1966):

> [P]laintiff contends that since the reporter's information was not gathered from a public and official proceeding, it does not fall within the scope of the statutory qualified privilege.
>
> With this we cannot agree. The statute protects newspaper publishers if the article is a fair and true report of the public and official proceeding. The fact that the reporter herein relied on the word of another as to the nature of the complaint and warrant is immaterial. The statute does not command the reporter to obtain his information from the official court records. At his risk, and at the risk of his publisher, he may rely upon the word of another as to the contents of the complaint and warrant, and that it will be so issued if it has not already been.

Thus, where a person is arrested and formally charged with a criminal offense, a report concerning the incident need not be based on information

---

[2] The *Rouch* Court went on to analyze the matter under First Amendment principles, which have supplanted the common-law qualified "public-interest" privilege, and ultimately held that a report of an arrest and of the facts used to establish the probable cause for the arrest amounts to speech of public concern. Plaintiffs who bring libel actions on the basis of such reports must prove that the statements were false and that the defendants were negligent in so reporting. 427 Mich 206. See also *Philadelphia Newspapers, Inc v Hepps,* 475 US 767; 106 S Ct 1558; 89 L Ed 2d 783 (1986).

gathered from the official proceeding itself. However, when the reporter relies on information from outside the official record, he does so at his risk. That is, the report, to be privileged, must still be "fair and true." The information obtained and published must substantially represent the matter contained in the court records. *McCracken,* p 39. This Court has held that such a standard is met, and a defendant is not liable, where the "gist" or the "sting" of the article is substantially true, that is, where the inaccuracy does not alter the complexion of the charge and would have no different effect on the reader than that which the literal truth would produce, absent proof that such variance caused the plaintiff damage. See *Fisher v Detroit Free Press, Inc,* 158 Mich App 409, 414; 404 NW2d 765 (1987).

While defendant has argued, and the trial court agreed, that the issue whether a report is fair and true is always a question of law for the court and that there is no question here that the articles concerning plaintiff were substantially accurate, we disagree. Where the facts are disputed or where reasonable minds could disagree over whether the inaccuracy could produce a different effect on the reader absent proof that such variance caused damage, the issue must be left to the trier of fact. Arguably, where a person is reported to have been charged with a crime and in actuality was not, there is little, if any, question of the substantiality of the inaccuracy. The damage is done by the accusation. Even where an article misrepresents, for example, the extent of an amount allegedly stolen by an accused, if the discrepancy is relatively small, the fact of the charge remains and the nature of that charge is not substantially altered. The same might not be said if the amount reported by the press is huge

but the amount alleged in court is insignificant. Thus, there are some cases in which we could say, as a matter of law, that the article was or was not substantially accurate. Yet, the line is not always so easily drawn. Here, there is no dispute that while defendant was charged with criminal sexual conduct, following the preliminary examination, the allegation that he assaulted the girl thirty to fifty times in a 1½ year period, an allegation that was repeated in all but the last of the subsequent articles, was not reflective of what was contained in the court records. We cannot say what effect this divergence from the record would have had on the reader. This, along with the issue of what, if any, damage was incurred by plaintiff must be answered by the trier of fact. It is possible that a jury would conclude that plaintiff suffered little or no damage as a result of the public's coming to believe that he was accused of thirty to fifty assaults rather than eight. That is not for us to decide.[3] Summary disposition was therefore improperly granted on this issue. At trial, the issue will not be whether there is a privilege, but whether it was abused by reporting substantially inaccurate information.

Regarding the article describing the assault and battery plea proceedings, we must likewise find summary disposition was improperly granted. Here, the discrepancy between what actually transpired and what was reported is clear. The article stated that plaintiff had pleaded no contest to the charge, was thus "willing to accept the consequences of the conviction," and was "sentenced" to six months' probation. However, plaintiff's plea was not accepted, but rather was taken under

---

[3] We do not comment on the effect of plaintiff's subsequent acquittal on the criminal sexual conduct charge because that issue was not addressed below.

advisement for six months, and the charge was then dismissed. Without acceptance of the plea, there was no "conviction" and, consequently, there could be no sentence. MCL 767.37; MSA 28.977. Thus, the article's inaccuracy altered the complexion of the entire affair, arguably leading the reader to believe that plaintiff had been treated as though he had pleaded guilty to the charge and had been sentenced when in fact neither was true. The trial court erred in finding that this article was substantially accurate and in premising summary disposition on that finding.

Reversed.