# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL J. BEDFORD,

    Plaintiff-Appellant,

v

DEREK S. WITTE, JORDAN C. HOYER, and
LAW OFFICES OF JORDAN C. HOYER, PLLC,

    Defendants-Appellees.

FOR PUBLICATION
November 22, 2016
9:05 a.m.

No. 327372
Kent Circuit Court
LC No. 14-011752-CZ

---

GARY STEWART, JR.,

    Plaintiff-Appellant,

v

DEREK S. WITTE, JORDAN C. HOYER, and
LAW OFFICES OF JORDAN C. HOYER, PLLC,

    Defendants-Appellees.

No. 327373
Kent Circuit Court
LC No. 14-011813-CZ

---

Before: MURRAY, P.J., and SAWYER and METER, JJ.

METER, J.

Plaintiffs Michael J. Bedford and Gary Stewart, Jr., appeal as of right an opinion and order[1] granting summary disposition under MCR 2.116(C)(8) to defendants Derek S. Witte, Jordan C. Hoyer, and the Law Offices of Jordan C. Hoyer, PLLC. These appeals involve the interpretation of the fair reporting privilege, codified at MCL 600.2911(3). We affirm in part, reverse in part, and remand for further proceedings.

---

[1] Although plaintiffs filed separate complaints, the trial court issued a joint order.

In December 2013, defendants, acting on behalf of their clients—the plaintiffs in an underlying collection action in Van Buren County—filed a complaint in the United States District Court for the Western District of Michigan against Bedford, Stewart, and others. Defendants alleged in that complaint that Bedford, Stewart,[2] and others acted unethically during the collection litigation.[3] Defendants set forth eight causes of action, including a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961 *et seq.*; malicious prosecution; and tortious interference with a contract. On January 2, 2014, defendant Derek Witte participated in an interview with a reporter for a local CBS affiliate. During that interview, Witte allegedly stated that "we can say with certainty" that plaintiffs broke the law by obstructing justice, committing bribery, and perpetrating mail and wire fraud. According to plaintiffs, defendants then, on the website for their law firm, posted a copy of the federal complaint and a link to the news interview.

In December 2014, plaintiffs filed the defamation complaints that led to the present appeals. Plaintiffs alleged that defendants knowingly and maliciously made false statements about plaintiffs in the federal lawsuit and the interview and furthered their defamation by the public postings on the law firm's website. Ultimately, after various pleadings and arguments, the trial court ruled that the absolute privilege for judicial proceedings applied to the filing of the complaint and that defendants could not be held liable for this filing. The trial court additionally concluded that MCL 600.2911(3) protected defendants from liability related to the interview and the postings on the website and granted defendants' motions for summary disposition under MCR 2.116(C)(8).

This Court reviews de novo issues of statutory interpretation and orders granting summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012); *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). Under MCR 2.116(C)(8), summary disposition is appropriate if "[t]he opposing party has failed to state a claim upon which relief can be granted." "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Dalley*, 287 Mich App at 304-305. "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Dalley*, 287 at 305 (quotation marks and citation omitted).

Moreover, this Court reviews de novo, as a question of law, whether there exists a privilege that immunizes a defendant from liability for defamation. *Northland Wheels Roller Skating Ctr, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 324; 539 NW2d 744 (1995); *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992).

---

[2] Stewart and Bedford will henceforth be referred to in this opinion as "plaintiffs."

[3] Stewart served as a defense attorney in the collection action, and Bedford, who is the Van Buren County prosecutor, filed various criminal charges against an agent and an attorney for the plaintiffs in the collection action.

"The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).

Privilege can be used as a defense in a defamation action. *Postill v Booth Newspapers, Inc*, 118 Mich App 608, 618; 325 NW2d 511 (1982). The defense of privilege is grounded in public policy; in certain situations, the criticism uttered by the defendant is sufficiently important to justify protecting such criticism notwithstanding the harm done to the person at whom the criticism is directed. *Dadd v Mount Hope Church*, 486 Mich 857, 860; 780 NW2d 763 (2010). "Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried." *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006). The purpose of absolute immunity for attorneys under the judicial proceedings privilege is to promote the public policy of allowing attorneys broad freedom to obtain justice for their clients. *Id*. at 265. The trial court correctly ruled that the filing of the federal complaint was not actionable because of the judicial proceedings privilege.[4] See, generally, *id*. at 264.

The next question is whether defendants could be held liable for posting the complaint on the firm's website. This action (and, for that matter, the interview and the posting of the link to the interview) did not fall within the judicial proceedings privilege because they were not made as part of the actual judicial proceedings but were extraneous and unnecessary to those proceedings. See *Timmis v Bennett*, 352 Mich 355, 365; 89 NW2d 748 (1958). Defendants thus rely on the fair reporting privilege. MCL 600.2911(3) states, in relevant part:

> Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record, a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report.[5]

In order for a report to be privileged under this statute, the report must be "fair and true . . . ." *Id*. In other words, the report must substantially represent the public record or other pertinent matter. See *Northland Wheels*, 213 Mich App at 325. If any inaccuracy does not alter the effect the literal truth would have on the recipient of the information, the pertinent standard has been satisfied. *Id*. Clearly, the publishing of an exact copy of the complaint that initiated judicial proceedings constitutes a "fair and true" report with respect to those proceedings. Plaintiffs contend that defendants cannot avail themselves of the fair reporting privilege with

---

[4] It is not entirely clear whether plaintiffs are even challenging this aspect of the court's opinion and order. At any rate, the law clearly and definitively supports the trial court's ruling.

[5] "Libel" as used in MCL 600.2911 includes "defamation by radio or television broadcast." MCL 600.2911(8).

regard to the posting of the complaint because (1) plaintiffs pleaded that defendants acted with malice[6] and (2) defendants were the creators of the posted document. However, "[w]e are bound to ascertain and give effect to the Legislature's intent, and the Legislature is presumed to have intended the meaning it plainly expressed." *Id*. "If the meaning of the statutory language is clear, judicial construction is neither necessary nor permitted." *Id*. MCL 600.2911(3) carves out no exception for malice or for so-called "self-reporters." See, generally, *Book-Gilbert v Greenleaf*, 302 Mich App 538, 541; 840 NW2d 743 (2013) (a court may not read into statutes language that the Legislature has seen fit to omit).[7]

The cases plaintiffs cite for the proposition that malice can vitiate the fair reporting privilege in MCL 600.2911(3) are simply not apposite. Indeed, plaintiff cites cases referring to a "qualified privilege"[8] under the statute or similar, prior statutes, but a closer look at these cases reveals that they do not discuss malice. See *McCracken v Evening News Ass'n*, 3 Mich App 32, 39-40; 141 NW2d 694 (1966) (referring briefly to a "qualified privilege" but not discussing malice and instead concluding that the reportage in question was substantially accurate and the plaintiff had not shown proof of damages), *Nabkey v Booth Newspapers, Inc*, 140 Mich App 507, 514-515; 364 NW2d 363 (1985) (referring to a "qualified privilege" but not discussing malice and instead emphasizing that the statute encompassed reports of "official proceedings" and remanding for a determination regarding whether the reports in question should be characterized as such), *Rouch v Enquirer & News of Battle Creek*, 427 Mich 157, 164 n 1, 164-173; 398 NW2d 245 (1986) (briefly referring to a "qualified privilege" but then going on simply to conclude that the statements at issue did not relate to a "proceeding" encompassed by the statute),[9] and *Koniak v Heritage Newspapers, Inc*, 190 Mich App 516, 521-524; 476 NW2d 447 (1991), remanded 441 Mich 858 (1992) (mentioning a "qualified privilege" but not discussing malice and instead discussing the "fair and true" standard). See also *Kefgen v Davidson*, 241 Mich App 611, 623 n 7; 617 NW2d 351 (2000) (analysis under MCL 600.2911(3) focuses on whether the reportage in question was fair and true). Because "actual malice" (which, plaintiffs argue, is the applicable

---

[6] Plaintiffs attempt to define "malice" in various ways in their appellate briefs, at one point, while discussing the issue, referring to whether a report is "free from . . . injustice."

[7] We note that the Legislature used a "malice" standard in MCL 600.2911(6), which states: "An action for libel or slander shall not be brought based upon a communication involving public officials or public figures unless the claim is sustained by clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether or not it was false."

[8] In general, a "qualified privilege" is one that can be overcome by a showing of untruth and malice. See *Dadd*, 486 Mich at 857 n 1.

[9] In their combined reply brief on appeal, plaintiffs cite this Court's opinion in *Rouch v Enquirer & News of Battle Creek*, 137 Mich App 39; 357 NW2d 794 (1984), aff'd and remanded 427 Mich 157 (1986). This Court in *Rouch* discussed the general meaning of a qualified privilege but went on to conclude that the statutory privilege did not apply because "official proceedings" were not at issue. *Id*. at 46-48. The case simply does not stand for the proposition for which plaintiffs cite it.

standard here) is defined as knowledge of falsity or recklessness regarding the issue of falsity, see *id*. at 624, it only makes common sense that a "fair and true" report would not be subject to an exception for malice, as plaintiffs contend. Indeed, this Court has referred to the "qualification" connected to the statutory fair reporting privilege as the requirement "that the report . . . be fair and true." *Stablein v Schuster*, 183 Mich App 477, 482; 455 NW2d 315 (1990). The Court specifically stated, "The immunity is a qualified one, but defendant has met the qualifications that the report must be fair and true." *Id*.

In rejecting plaintiffs' various arguments concerning the posting of the complaint on the firm's website, we find highly instructive the case of *Amway Corp v Procter & Gamble Co*, 346 F3d 180 (CA 6, 2003). In *Amway*, *id*. at 183-184, similar to the present case, legal complaints filed against the plaintiff were posted on a website and the plaintiff took issue with those postings. The plaintiff argued, in part, that certain of the defendants could not avail themselves of the privilege codified in MCL 600.2911(3) because they had created one of the complaints *and* participated in publishing it on the website. *Amway*, 346 F3d at 185. The plaintiff also argued that the conduct of certain of the defendants "was undertaken with a malicious and manifest disregard for the rights of [the plaintiff]." *Id*. at 184. The court concluded that "Michigan's fair reporting privilege applies to the publication of the entire complaints on [the] website, and no exception to the privilege applies to the . . . conduct complained of here." *Id*. at 187. The court emphasized that "the plain language of the statute clearly direct[ed] [its] decision," subsequently stating:

> Generally speaking, a party's publication of any actual court filing or statement made in a judicial proceeding is privileged because the public has a legitimate interest in accessing and viewing that type of information. [The plaintiff] brings suit for injuries claimed under a state-created tort, but the state has seen fit to codify a general privilege and not to except from it the kind of conduct alleged in this case. The state has not, contrary to [the plaintiff's] arguments, limited that privilege in a way that exposes the [d]efendants to liability. [*Id*. at 187-188.]

We agree with the *Amway* court that the plain language of the statute simply does not provide an exception for cases involving malice (however plaintiffs try to define it) or self-reporting. As such, the trial court correctly granted summary disposition to defendants with regard to the act of posting the complaint on the law firm's website.[10]

---

[10] As noted by the *Amway* panel, the case of *Park v Detroit Free Press Co*, 72 Mich 560; 40 NW 731 (1888), is clearly not applicable to a situation like that at issue here and in *Amway* because "[c]ourt filings were not public records in Michigan when *Park* was decided more than one hundred years ago." *Amway*, 346 F3d at 188. Plaintiffs also place great reliance on *Williams v Detroit Bd of Ed*, 523 F Supp 2d 602 (ED Mich, 2007), but *Williams* simply stands for the proposition that, to avail oneself of the privilege in MCL 600.2911(3), one must actually report the public record at issue and not simply create the record and supply it to another, who then reports it. See *Williams*, 523 F Supp 2d at 607. The present case does not involve a dispute with

We now turn to the television interview and the posting of the link on the firm's website. Plaintiffs argue that the comments made by Witte during the television interview did not constitute mere reportage on the federal lawsuit, but instead were "added" comments that are expressly precluded from protection under MCL 600.2911(3). As discussed above, that statute protects a person's right to give a "fair and true report of matters of public record . . . ." *Id.* The statute also provides:

> This privilege shall not apply to a libel which is contained in a matter added by a person concerned in the publication or contained in the report of anything said or done at the time and place of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, which was not part of the public and official proceeding or governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body. [*Id.*]

As noted in *Amway*, 346 F3d at 187, "[t]he statute excepts from the privilege libels that are not a part of the public and official proceeding or governmental notice, written record or record generally available to the public." Here, viewing the defamation complaint in the light most favorable to plaintiffs, Witte's comments did not merely summarize what was alleged—but not yet adjudicated—in the federal complaint. He stated that "we can say with certainty" that plaintiffs broke the law in various ways. Given the level of certainty expressed, we conclude that his words did alter the effect the literal truth would have on the recipient of the information, and thus the "fair and true" standard in MCL 600.2911(3) was not satisfied. *Northland Wheels*, 213 Mich App at 325. An expansion beyond the public record occurred. *Amway*, 346 F3d at 187. Accordingly, defendants were not entitled to claim the fair reporting privilege with regard to the television interview and the link on their website.[11]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Patrick M. Meter

---

regard to this proposition; indeed, plaintiffs do not argue that defendants were not the parties responsible for "publishing" the statements at issue.

[11] We express no opinion regarding other defenses that might be available. We merely conclude that the trial court erred in applying the fair reporting privilege to the interview and link.