ROYAL PALACE HOMES, INC v CHANNEL 7 OF DETROIT, INC

Docket No. 126381. Submitted August 4, 1992, at Detroit. Decided
November 17, 1992, at 9:55 A.M.

Royal Palace Homes, Inc., and Royal Shannon Homes, Inc.,
brought a libel action in the Wayne Circuit Court against
Channel 7 of Detroit, Inc., and others after the defendants
broadcast unfavorable news reports and a program relating to
the plaintiffs' residential construction businesses. The defen-
dants moved for summary disposition, contending that the
plaintiffs, by merely appending to their complaints transcripts
of the broadcasts, failed to state a claim upon which relief
could be granted because they did not plead or identify specifi-
cally the allegedly libelous statements in the broadcasts. The
court, Pamela R. Harwood, J., denied the motion. The defen-
dants appealed by leave granted.

The Court of Appeals *held:*

1. A cause of action for libel related to a television broadcast
is not stated by pleading general allegations of libel and ap-
pending a transcript of the allegedly defamatory broadcast. A
plaintiff must identify specifically the statements claimed to be
materially false and how the defendant was negligent or acted
with reckless disregard of the truth.

2. Justice requires that the plaintiffs be granted leave to
amend their complaint pursuant to MCR 2.118(A)(2).

Remanded for further proceedings.

MICHAEL J. KELLY, J., concurring in the result, stated that
leave was improvidently granted because the trial court had
not decided whether the plaintiffs had stated a cause of action
for "false light" defamation.

*Kitch, Saurbier, Drutchas, Wagner & Kenney,
P.C.* (by *Jeremiah J. Kenney* and *Pamela Hobbs*),
for Royal Palace Homes, Inc., and Royal Shannon
Homes, Inc.

*Dickinson, Wright, Moon, Van Dusen & Free-
man* (by *Lawrence G. Campbell, Timothy H. How-*

*lett,* and *Andrea Maya Windholz),* for Channel 7 of
Detroit, Inc., Scripps Howard Broadcasting Com-
pany, and M. J. Enterprises, Inc.

Before: CORRIGAN, P.J., and MICHAEL J. KELLY
and GRIFFIN, JJ.

CORRIGAN, P.J. In this defamation action, defen-
dants appeal by leave granted from the circuit
court's denial of their motion for summary disposi-
tion pursuant to MCR 2.116(C)(8). We remand with
instructions to permit plaintiffs an opportunity to
amend their complaint and for further proceedings
consistent with this opinion.

Plaintiffs, Royal Palace Homes, Inc., and Royal
Shannon Homes, Inc., are building contractors
engaged in the residential construction business.
Defendants, Channel 7 of Detroit, Inc., Scripps
Howard Broadcasting Company, and M. J. Enter-
prises, Inc., are producers or owners of two televi-
sion programs, "Channel 7 Action News" and
"Kelly & Company," broadcast by WXYZ-TV
(Channel 7) in Detroit. On the January 6, 1988,
edition of its 6:00 P.M. broadcast, "Action News"
ran a report about the difficulties encountered by a
couple, Paul and Kathy Laho, who had hired
Royal Palace to build a house for them. The story
reported that the Lahos' house had not passed
"rough inspection" by Livonia officials because of
several defects in the building and that the Lahos
might lose their entire $40,000 investment. A simi-
lar report was aired on the 11:00 P.M. newscast
that night. On January 7, Channel 7 broadcast a
follow-up story that included the statement:
"Other people who contacted us last night say
Royal Palace operates under other names to[o],
like Royal and Royal Shannon." On January 12,
1988, the theme of "Kelly & Company" was "Be-

ware of Home Builders." Portions of the January 6, 6:00 P.M. report were rebroadcast, the Lahos were interviewed live, and other guests and audience members participated.

On December 9, 1988, plaintiffs filed separate but virtually identical complaints, alleging two counts of libel. They alleged that defendants "made or allowed to be made certain false statements, insinuations, implications and/or innuendos" that plaintiffs were: "illegally and/or improperly operating [their] business[es], including but not limited to . . . providing potential homeowners the option of being their own builder"; "involved in unprofessional and/or unethical business practices"; "involved in unprofessional and unworkmanlike construction practices"; "responsible for the inability of persons known as Paul and Kathy Laho to pass rough inspection on their Livonia home"; "forcing prospective homeowners to obtain the required building permit in their names"; and "responsible for the Laho home being declared a public nuisance." The complaint also charged that "[t]hrough the use of headlines and backdrops presented on its broadcast [defendants] indicated that [plaintiffs were] involved in a building scam." The complaint appended full transcripts of all four broadcasts, but failed to identify any allegedly defamatory statements within them.

During discovery, defendants' interrogatories requested that plaintiffs specify what was false in each ·of the broadcasts. Plaintiffs responded by repeating the allegations in the complaint in paragraph form. Defendants then moved for summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief may be granted, arguing that Michigan law requires libel actions to be pleaded with specificity and that plaintiffs had failed to identify the allegedly libelous statements

. in the broadcasts at issue. The circuit court denied the defendants' motion, concluding that a plaintiff need only plead "the substance of" allegedly libelous communications, and that plaintiffs had satisfied that standard.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint, considering only the pleadings. *Wade v Dep't of Corrections,* 439 Mich 158, 162; 483 NW2d 26 (1992). All well-pleaded allegations are accepted as true, and construed most favorably to the nonmoving party. *Id.* at 162-163. A court may grant a motion pursuant to MCR 2.116(C)(8) only where the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.* at 163.

The components of a cause of action for libel are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 251; 487 NW2d 205 (1992) (*Rouch II*), citing *Locricchio v Evening News Ass'n,* 438 Mich 84, 115-116; 476 NW2d 112 (1991); *Prysak v R L Polk Co,* 193 Mich App 1, 14; 483 NW2d 629 (1992). In a case involving a private plaintiff, a media defendant, and a publication regarding an area of public concern, the constitution requires that the plaintiff bear the burden of proving falsity. *Rouch II, supra* at 252, citing *Philadelphia Newspapers, Inc v Hepps,* 475 US 767; 106 S Ct 1558; 89 L Ed 2d 783 (1986). See also *Masson v New Yorker Magazine, Inc,* 501 US —; 111 S Ct 2419, 2433; 115 L Ed 2d

447 (1991); *Milkovich v Lorain Journal Co,* 497 US 1; 110 S Ct 2695, 2704; 111 L Ed 2d 1 (1990).

Although Michigan recognizes the possibility of defamation "by implication," *Locricchio, supra* at 117, such claims face a severe constitutional hurdle. *Id.* at 122. Principles of general libel and First Amendment libel law continue to apply. *Id.* at 132. Michigan prohibits libel liability for true speech on matters of public concern. *Id.* at 121. Liability may not be imposed on a media defendant for facts about public affairs it publishes accurately and without material omissions. *Id.* at 117.

As Chief Justice CAVANAGH wrote in *Locricchio*:

> [I]t is enough to conclude, as a matter of law, that a defamation defendant cannot be held liable for the reader's possible inferences, speculations, or conclusions, where the defendant has not made or directly implied any provably false factual assertion, and has not, by selective omission of crucial relevant facts, misleadingly conveyed any false factual implication. [438 Mich 144.]

Michigan has generally held that claims of libel must be pleaded with specificity. In *Rouch II, supra,* the trial court had originally granted summary disposition to the defendants on the basis of privilege, which our Supreme Court later found inapplicable; see *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986) (*Rouch I*). The case was tried. Subsequently, the Supreme Court reversed a verdict for the plaintiff because the allegedly defamatory article was not "materially false." *Rouch II, supra* at 245. Justice RILEY, while concurring with the decision, concluded that the original grant of summary judgment should have been affirmed.

> [P]laintiff's failure to allege and identify in his

pleading, supplemental pleading, and answers to defendant's interrogatories, specifically which statements he considered to be materially false and how the newspaper either was negligent or reckless in publishing the story, were proper grounds for summary judgment by the trial court. [440 Mich 272.]

Justice RILEY relied, in part, on MCR 2.111(B)(1), which "requires plaintiffs to state in their pleadings '[a] *statement of the facts,* without repetition, *on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims* the adverse party is called on to defend.' " *Id.* at 274. (Emphasis in *Rouch II.*)

The relatively simple requirement of pleading facts to support allegations of material falsity, negligence, or reckless disregard for the truth should be followed by plaintiffs in defamation actions, and, pursuant to MCR 2.116(C)(8), defendant should have been entitled to summary disposition on this ground alone a decade ago. [*Id.* at 279.]

Justice RILEY's position is consistent with previous decisions of this Court. In *De Guvera v Sure Fit Products,* 14 Mich App 201; 165 NW2d 418 (1968), the plaintiff alleged defamation when the defendant stopped payment on a check. We affirmed summary judgment for the defendant, citing with approval Gatley, Law & Practice of Libel & Slander (1924 ed), p 467: "The law requires *the very words of the libel* to be set out in the declaration in order that the court or judge may judge whether they constitute a ground of action." (Emphasis supplied.) 14 Mich App 206. More recently, we rejected a claim of defamation that contained only "general allegations" that the defendants'

statements were defamatory. *Gonyea v Motor Parts Federal Credit Union,* 192 Mich App 74, 80; 480 NW2d 297 (1991). See also *MacGriff v Van Antwerp,* 327 Mich 200, 204; 41 NW2d 524 (1950) (apparently dismissing a libel claim because the "contents" of the alleged libel were not "shown"); *Fisher v Detroit Free Press, Inc,* 158 Mich App 409, 413; 404 NW2d 765 (1987) (summary disposition correct where the plaintiff failed to "sufficiently plead" a "material falsehood"); *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 589-590; 349 NW2d 529 (1984) (claim of defamation must be specifically pleaded, i.e., "the defamatory words complained of"); *Wynn v Cole,* 68 Mich App 706, 713; 243 NW2d 923 (1976) (complaint in libel action must include the contents of the libelous statement).

Our Supreme Court's recent decision in *Dacon v Transue,* 441 Mich 315; 490 NW2d 369 (1992), confirms the importance of specificity in pleading in Michigan. *Dacon* was a medical malpractice action in which the complaint alleged that the defendants had not administered the right medication to a patient. Just before trial, however, counsel for the plaintiff discovered another possible theory of negligence, involving when the medication was administered. The trial court refused to admit evidence regarding this theory at trial or to allow the plaintiff to amend his complaint. The Supreme Court affirmed, holding that "[t]he pleadings make general, conclusory allegations, which do not provide reasonable notice to the defendants." *Id.* at 328. "Leaving a defendant to guess upon what grounds plaintiff believes recovery is justified violates basic notions of fair play and substantial justice." *Id.* at 329.

Both parties rely on *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416; 205 NW2d 504 (1973),

which allowed a claim of slander—not libel—when the plaintiff's complaint did not allege the specific statements made. The *Pursell* holding is restricted to allegations of slander; *id.* at 422 (because slanderous statement "cannot be retained verbatim" it is not necessary to recite the exact words used). *Pursell* held that the plaintiff's complaint did not even satisfy the more generous rule applicable to slander:

> A review of the complaint in the instant case shows that it does not set out the substance of the statements complained of but rather speaks in terms of conclusions. *The law is well settled that the mere statement of the pleader's conclusions, unsupported by allegations of fact upon which they are based, will not suffice to state a cause of action.* [*Id.* at 422; emphasis supplied.]

*Chapin v Greve,* 787 F Supp 557, 566 (ED Va, 1992), is persuasive. The plaintiff had organized several charitable ventures, including a program that solicited donations for shipments of food packages to United States military personnel in the Persian Gulf. The defendants published an article that reported that the plaintiff's program "charg[ed] hefty mark-ups" and asked, "Who will benefit more from the project—GIS or [the plaintiff]?" The court granted the defendants summary judgment pursuant to FR Civ P 12(b)(6):

> [T]he Court is not persuaded that the Greve article, taken as a whole and considering the plain and natural meaning of its language, can reasonably be read as directly stating or indirectly implying the defamatory meanings ascribed by Chapin in his complaint. Chapin may have found the story embarassing or annoying, but that is not enough to subject these defendants to a libel action. [*Id.* at 568.]

"[The defendant] is not responsible for every defamatory implication a reader might draw from his report of true facts, absent evidence that he intended the defamatory implication." *Id.* at 566. See also *White v Fraternal Order of Police,* 285 US App DC 273, 287; 909 F2d 512 (1990) (articles that contained only "unpleasant but true facts," "devoid of any suggestive juxtapositions, turns of phrase, or incendiary headlines" were not defamatory).

It is a basic principle of libel law that truth is a defense to an action for defamation. Const 1963, art 1, § 19. See, e.g., *Butcher v SEM Newspapers, Inc,* 190 Mich App 309, 312; 475 NW2d 380 (1991) (if the gist of an article is substantially accurate, the defendant cannot be liable). It follows that "the precise meaning and choice of words employed is a critical factor in any evaluation of falsity." *Rouch II, supra* at 263, n 25.

The essence of this controversy amounts to a question: Who bears the burden of specificity? Plaintiffs assert that pleading general allegations of libel and appending a transcript of the allegedly defamatory broadcasts is sufficient. In other words, the defendants must determine, from the transcripts, what statements are false and defamatory. Yet, the transcripts of the defendants' first broadcast alone contain at least twenty-eight different propositions, any one of which might, if untrue, possibly have damaged plaintiffs' business reputation; see *Michigan Microtech, Inc v Federated Publications, Inc,* 187 Mich App 178, 183; 466 NW2d 717 (1991).[1] Defendants do not bear the burden of discerning their potential liability from

[1] The same transcript also includes three expressions of opinion by the anchorpersons of the news broadcast. In First Amendment defamation cases involving a media defendant, an expression of opinion is constitutionally protected. *Fisher, supra* at 414.

these transcripts. Plaintiffs must plead precisely the statements about which they complain.

Plaintiffs contend that the rule of specificity should not apply because their cause of action is for "defamation by implication." Indeed, they have conceded that none of the statements in the four broadcasts was necessarily "false," but assert that the broadcasts as a whole create defamation "by innuendo." Plaintiffs overlook, however, the need to set out the "suggestive juxtapositions, turns of phrase, or incendiary headlines," to borrow from *White, supra,* that create the defamatory "implication." Nor have plaintiffs pointed to any "selective omission of crucial relevant facts [or] misleadingly conveyed . . . false factual implication." *Locricchio, supra* at 144. With the exception of a subparagraph in their complaint ("Through the use of headlines and backdrops . . . [defendants] indicated that [plaintiffs were] involved in a building scam."), plaintiffs have offered no specific connection between the transcripts and the allegations. At this juncture, they have failed to state a claim upon which relief may be granted.

Plaintiffs should, however, be given the opportunity to amend their complaint. Leave to amend a pleading "shall be freely given when justice so requires." MCR 2.118(A)(2). As our Supreme Court aptly explained in *Rouch I, supra:*

> [T]he need [exists] to balance a free flow of information and ideas necessary to our concept of freedom and democracy with the traditional right of the individual to redress harm to reputation . . . . [427 Mich 195.]

If, on remand, plaintiffs are able to identify the "materially false" statements or to establish the existence of defamatory implications, the case may

proceed. If plaintiffs do not succeed in meeting this standard, then summary disposition of their complaint will be proper.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

Griffin, J., concurred.

Michael J. Kelly, J. *(concurring).* I concur in the result reached by Judge Corrigan, mainly because plaintiffs have been given the opportunity to amend their pleadings. In my opinion, leave to appeal was improvidently granted because the trial court had not decided if this was a "false light" defamation case, and, if so, whether Michigan law recognizes such a cause of action. The Restatement of Torts, 3 Restatement Torts, 2d, § 565, provides for such a cause of action. Section 565 provides that a defamatory communication may consist of a statement of fact. Comment b to § 565 provides:

> b. *Direct and indirect statements of fact.* To be defamatory under the rule stated in this Section, it is not necessary that the accusation or other statement be by words. It is enough that the communication is reasonably capable of being understood as charging something defamatory. Thus another may be defamed by a statement that he associates with persons of notoriously disreputable character or by attributing to him the characteristics of literary or historical figures of ill repute.
>
> Illustration:
>
> 1. A without the consent of B, an amateur golfer, publishes B's picture in an advertisement that represents B in the act of eating a chocolate bar manufactured by A's company. A number of persons understand from this advertisement that B has forfeited his amateur standing as a golfer by receiving compensation for the publication of his photograph. The communication is defamatory.

Plaintiffs certainly have alleged damages as a result of the four broadcasts. I do not think there is any dispute about that. When the case was argued, it seemed to me that plaintiffs were relying on a cause of action urging that defendants' broadcasts had manipulated the truth in such a way as to cast them in the false light of perpetrating unprofessional and unworkmanlike construction practices, whereas, in truth and fact, plaintiffs were "shell" builders, and sold to purchasers, including the Lahos, who were finishers of their own homes. The trial court had not viewed the videotapes of the programs and expressly left open to defendants the opportunity to reapply for summary disposition upon the furnishing of such videotapes to the court. Perhaps this will be done on remand, and when the case finds its way back here, the false light defamation question may be ripe for decision in this Court and the Supreme Court.